UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

EDERICK FABRIZIO also known as
EDERICK FABRICIO,

                              Plaintiff,

        v.                                                    9:20-CV-0011
                                                              (GTS/ML)

SUPERINTENDENT BRANDON SMITH,
IGP. T. MAURO, C.O. RILEY, C.O. OLIVER,
C.O. LASTER,

                              Defendants.

─────────────────────────────────

APPEARANCES:

EDERICK FABRIZIO
also known as
EDERICK FABRICIO
Plaintiff, *pro se*

HON. LETITIA JAMES                    NICHOLAS LUKE ZAPP, ESQ.
Attorney General for the              Assistant Attorney General
State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**MIROSLAV LOVRIC**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION AND ORDER[1]

        Currently before the Court, in this civil rights action filed by Ederick Fabrizio ("Plaintiff" or

"Fabrizio") against Superintendent Brandon Smith ("Smith"), Inmate Grievance Program

─────────────────────

        [1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. §
636(b) and N.D.N.Y.L.R. 72.3(c).

Supervisor T. Mauro ("Mauro"), C.O. Riley ("Riley"), C.O. Oliver ("Oliver"), and C.O. Laster ("Laster") ("Defendants"), is Defendants' motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. No. 33.  For the reasons set forth below, I recommend that Defendants' motion be granted in part and denied in part.

## I.  RELEVANT BACKGROUND

### A.  Procedural History

Plaintiff commenced this action by filing a Complaint together with a motion for leave to proceed in forma pauperis ("IFP").  Dkt. No. 1 ("Compl.") and Dkt. No. 8 ("IFP Application"). In a Decision and Order filed on March 9, 2020 (the "March Order"), the Court granted the Plaintiff's motion to proceed in forma pauperis and reviewed the Complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A.  Dkt. No. 11.  In the March Order, the Court found that the following claims survived review and required a response: (1) Eighth Amendment excessive force claims against Riley and Oliver; (2) First Amendment retaliation claims against Laster related to incidents that occurred in February 2018 and March 2018; (3) First Amendment retaliation claims against Oliver and Riley for incidents that occurred in April 2018; and (4) First Amendment retaliation claims against Smith and Mauro.  Dkt. No. 11.  On September 17, 2020, in lieu of an answer, Defendants filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. Nos. 33 and 41 (supplement).  Plaintiff has opposed the motion.  Dkt. No. 39.

### B.  Facts[2]

At the relevant time, Plaintiff was confined at Greene Correctional Facility ("Greene

---

[2] The relevant facts are recited from the Complaint and exhibits annexed to the Complaint (Dkt. Nos. 1-1 and 1-2) and, for the purposes of this motion, are taken as true.

C.F."). *See generally*, Compl.

On December 3, 2017, Plaintiff filed a grievance (GNE 9658-17) complaining that defendant Laster, and another corrections officer, harassed him in retaliation for "old claims and lawsuits against the Commissioner and the employes [sic] of the administration of Green Haven and Elmira." Dkt. No. 1-1 at 64. Plaintiff alleged that Laster placed him in cube confinement without a misbehavior report. *Id*. Defendant Mauro acknowledged receipt of the grievance and advised Plaintiff that the grievance was forwarded to Defendant Smith for investigation. *Id.* at 65. Plaintiff forwarded two additional letters to the Inmate Grievance Resolution Committee ("IGRC") requesting an investigation into Laster's behavior. *See id*. at 66-67.

On December 9, 2017, at approximately 5:00 p.m., as Plaintiff exited the mess hall, defendant Riley grabbed Plaintiff by his coat, forced him to put his hands on a fence, and kicked his legs apart. Compl. at 11; Dkt. No. 1-1 at 71. Plaintiff fell to his knees and Riley and defendant Oliver "smacked" Plaintiff's face and rubbed his face into the fence. *Id*. Plaintiff heard Defendants say, "I hate that they got all this cameras around [sic]." *Id*. Plaintiff suffered dizziness and a laceration to his forehead. Compl. at 11-12.

On December 12, 2017, Plaintiff filed a grievance (GNE 9664-17) related to the December 9, 2017 incident. Compl. at 12-13; Dkt. No. 1-1 at 71, 73. Mauro forwarded the matter to Smith for an investigation and, after Smith denied the grievance, Plaintiff appealed Smith's decision to the Central Office Review Committee ("CORC"). Dkt. No. 1-1 at 22, 73, 75-76.

On February 16, 2018, at approximately 9:00 a.m., during a search of Plaintiff's cube,

Laster read Plaintiff's note-pad, which contained information about his grievances and lawsuits. Compl. at 18; Dkt. No. 1-2 at 2-3. Laster asked Plaintiff why he made the notes and Plaintiff responded that the notes were for his lawsuits. *Id*. Laster continued to read the notes. *Id*. After Laster finished reading, she left and returned with a contraband slip citing Plaintiff for possessing a mess hall spoon and an extra bed sheet. *Id*. Later that evening, Laster returned to Plaintiff's cube and confiscated Plaintiff's note-pad. Compl. at 18-19. Laster did not return the note-pad or provide a contraband slip for the note-pad. *Id.*

On March 18, 2018, Laster woke Plaintiff and searched his cube. Compl. at 20-21.

On April 5, 2018, while Plaintiff and another inmate were talking in the yard, an officer ordered them to put their hands on the wall. Compl. at 21; Dkt. No. 1-2 at 68. Oliver arrived at the scene, searched Plaintiff, and directed Plaintiff and the other inmate to remove their shoes and stand, in their socks, on the "freezing floor" for "a while [sic]". *Id.*

On April 6, 2018, Plaintiff was ordered to line up last after the yard was closed. Compl. at 21-23; Dkt. No. 1-2 at 68-69. As Plaintiff walked towards his dorm, "a bunch of officers" stopped Plaintiff and another inmate, put them in handcuffs, pat searched them, and put them in a van with Riley. *Id*. When the van arrived in "the front area," Plaintiff and the inmate were placed in separate rooms. *Id.* Once inside a room, Plaintiff was ordered to face the wall, while still handcuffed. *Id.* Riley searched Plaintiff "little by little" and directed Plaintiff "to pass every item of clothes [sic] to him, till the plaintiff was naked[.]" Compl. at 21-23; Dkt. No. 1-2 at 68-69. Riley then directed Plaintiff to "turn around and spread his ass cheeks" and cough. *Id.* Plaintiff could hear other officers outside laughing and commenting that "they had violated the plaintiff in so many kind of ways that he just don't care no more

4

[sic]." *Id*. Riley "threw" Plaintiff's clothes at him and told him to get dressed, but confiscated Plaintiff's winter gloves and scarf without issuing a contraband slip. *Id.*

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty*., 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on de novo review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549

F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[3]

The Supreme Court has explained that such fair notice has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F.Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F.Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 Moore's Federal Practice § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak*, 629 F.Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the conceivability of an actionable claim, the Court clarified, the "fair notice" standard turns on the plausibility of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a

---

[3] *Accord*, *Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.).

pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations

omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id*. (citations omitted).

However, "in a pro se case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' "  *Govan v. Campbell*, 289 F.Supp.2d 289, 295 (N.D.N.Y. 2007) (Sharpe, M.J.) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).  The Second Circuit has opined that the court is obligated to " 'make reasonable allowances to protect pro se litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education.  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  As a result, *Twombly* and *Iqbal* notwithstanding, the court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests."  *Weixel v. Bd. of Educ*., 287 F.3d 139, 146 (2d Cir. 2002).

In considering a motion to dismiss under Rule 12(b)(6), the court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002)). In this instance, the Complaint includes 164 pages of exhibits including: (i) documents related to Plaintiff's prior lawsuit in this district; *Fabrizio v. Annucci, et al.*, No. 9:18-CV-0339 (GTS/DEP); (ii) grievance records; (iii) contraband receipts; (iv) copies of FOIL requests; and (v) documents related to Plaintiff's Article 78 petition.  The Court may review and consider the aforementioned documents, in considering the motion to dismiss.  *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

## III. DISCUSSION[4]

Defendants move to dismiss the Complaint, in its entirety arguing: (1) that the application of force on December 9, 2017 was de minimis and insufficient to state an Eighth Amendment claim; (2) the First Amendment retaliation claims are insufficiently plead; and (3) the claims against Mauro and Smith must be dismissed for lack of personal involvement. *See generally,* Dkt. No. 33-1.

## A. Eighth Amendment

Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." *Hudson*, 503 U.S. at 9 (internal citations omitted); *Blyden*, 186 F.3d at 262. However, "the malicious use of force cause harm constitutes an Eighth Amendment violation per se whether or not significant injury is evident." *Griffin v. Crippen*, 193 F.3d at 89, 91 (2d Cir. 1999) (citing *Blyden*, 186 F.3d at 263).

---

[4] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to Plaintiff.

"The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9–10 (citations omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Sims*, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Sims,* 230 F.3d at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Id*. (quoting *Hudson*, 503 U.S. at 7). In determining whether a defendant acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant [;] ... the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

Plaintiff claims that Riley forcefully grabbed him and asked him if he "understand [sic] English." *See* Compl. at 11. Riley kicked Plaintiff's legs apart causing Plaintiff to fall to the ground. *See id.* Plaintiff also claims that, while he was on his knees, Oliver, Riley and "other officers" began to "smack the plaintiff from the bottom of his face, while they was [sic] rubbing the plaintiff['s] face against the fence[.]" *See id.* During the incident, Defendants

10

said, "I hate that they got all this [sic] cameras around, and all this [sic] people looking." *See id.* As a result of the incident, Plaintiff "felt dizzy" and sustained a laceration to his forehead. *See* Compl. at 11-12.

Defendants argue that, even assuming that the allegations are true, the use of force alleged by Plaintiff was de minimis. *See* Dkt. No. 33-17. Viewing the Complaint in a light most favorable to Plaintiff and assuming the truth of the factual allegations, Plaintiff did not provoke Defendants and did not present any threat to Defendants. Plaintiff has alleged that Defendants used force maliciously, with the intent to cause harm. Therefore, pursuant to *Blyden*, Plaintiff has plausibly alleged that Riley and Oliver violated his Eighth Amendment constitutional rights. *See Phillips v. LaValley*, No. 9:12-CV-609 (NAM/CFH), 2014 WL 1202693, at *15 (N.D.N.Y. Mar. 24, 2014) (holding that because the conduct did not appear to be in a good-faith effort to maintain or restore discipline, but instead to solely cause harm, it was sufficient to establish a viable Eighth Amendment claim).

Accordingly, it is recommended that Defendants' motion, on this ground, be denied.[5]

## B. Retaliation

A cognizable retaliation claim pursuant to 42 U.S.C. § 1983 lies when prison officials take an adverse action against an inmate that is motivated by the inmate's exercise of a constitutional right, including the free speech provisions of the First Amendment. *See Friedl*

---

[5] In support of the motion to dismiss, Defendants rely upon cases that were decided at summary judgment, upon a more fully developed record. *See Morgan v. Luft*, No. 9:15-CV-0024 (GTS/DJS), 2017 WL 9511158 (N.D.N.Y. June 22, 2017); *Tavares v. City of New York*, No. 08 Civ. 3782, 2011 WL 5877550 (S.D.N.Y. Oct. 17, 2011); *Kalwasinski v. Artuz*, No. 02 CV 2852, 2003 WL 22973420 (S.D.N.Y. Dec. 18, 2003); and *Shabazz v. Pico*, 994 F.Supp. 460 (S.D.N.Y. 1998). Defendants failed to cite to any relevant decisions dismissing a case due to the use of de minimis force prior to discovery. The Court notes that the ruling on this motion "would not preclude defendants from raising similar arguments in a properly supported motion for summary judgment." *Osorio-Pizarro v. Burdo*, No. 9:16-CV-156 (TJM/ATB), 2018 WL 8576601, at *5 (N.D.N.Y. Oct. 19, 2018).

*v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws.").  As the Second Circuit has repeatedly cautioned, however, because such claims are easily incanted and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus, courts must approach such claims "with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *accord, Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

To state a prima facie claim pursuant to 42 U.S.C. § 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that (1) the conduct at issue was protected, (2) the defendants took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action–in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007).

"Adverse action" for purposes of a retaliation claim has been defined as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights . . . [o]therwise the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing *Dawes*, 239 F.3d at 493).  This is an objective test, so an adverse action may be found even if the plaintiff himself was not subjectively deterred from exercising his rights. *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004).

12

In considering whether there is a "causal connection between the protected speech and the adverse action, a court may consider a number of factors, including any statements made by the defendant concerning his motivation and the temporal proximity between the protected activity and the defendant's adverse action." *Roseboro v. Gillespie*, 719 F.Supp.2d 353, 366 (S.D.N.Y. 2011); *see also Tuitt v. Chase*, 11-CV-0776, 2013 WL 877439, at *7 (N.D.N.Y. Jan. 30, 2013) (Dancks, M.J.) (factors relevant to a consideration of causal connection "include: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation"). The Second Circuit has "held that temporal proximity between protected conduct and an adverse action constitutes circumstantial evidence of retaliation," but has also "consistently required some further evidence of retaliatory animus before permitting a prisoner to proceed to trial on a retaliation claim." *Washington v. Afify*, 681 Fed. App'x 43, 46 (2d Cir. 2017); *see also Thomas v. Waugh*, 13-CV-0321, 2015 WL 5750945, at *4 (N.D.N.Y. Sept. 30, 2015) (D'Agostino, J. adopting Report-Recommendation on de novo review) (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)) ("temporal proximity alone is insufficient to establish an inference of retaliation").

### 1. Claim Against Laster

In the March Order, the Court directed Laster to respond to the retaliation claims based upon her cell searches in February 2018 and March 2018. *See* Dkt. No. 11 at 27. Defendants move to dismiss these claims arguing Plaintiff failed to allege that Laster acted in retaliation for protect speech or conduct and further, that Laster's search of Plaintiff's cube in

March 2018 was not an adverse action.  *See* Dkt. No. 33-1 at 9.

With respect to the first element of a retaliation claim, as discussed *supra*, Plaintiff filed a grievance against Laster on December 5, 2017 accusing Laster of threats and retaliation.  *See* Compl. at 10-11; Dkt. No. 1-1 at 64.  Plaintiff annexed a copies of his grievance, the responses to his grievance, and his correspondence to the IGRC to the Complaint.[6]  *See id*. at 64-67.  Because the filing of a grievance is protected speech, *see Flood v. Cappelli*, 18-CV-3897, 2019 WL 3778736, at *7 (S.D.N.Y. Aug. 2, 2019) (collecting cases), Plaintiff has sufficiently alleged that he engaged in protected conduct.  Because Defendant does not present any further argument in support of dismissal of the retaliation claim against Laster based upon the February 2018 incident, the undersigned recommends that this portion of Defendants' motion be denied.

Regarding the March 2018 search, Defendants argue that "the act of Defendant Laster searching Plaintiff's cube on March 18, 2018 without further allegations does not constitute adverse action."[7]  *See* Dkt. No. 33-1 at 9.  "[T]he Supreme Court has held that inmates have no constitutional protection from cell searches, even those conducted for retaliatory reasons." *H'Shaka v. Drown*, No. 9:03CV937(LEK/RFT), 2007 WL 1017275, at *12 (N.D.N.Y. Mar. 30, 2007) (internal quotation marks omitted) (quoting *Hudson v. Palmer*, 468 U.S. 517, 530 (1984)).  However, "a retaliatory cell search accompanied by the confiscation of personal

---

[6] As discussed *supra*, on a motion to dismiss, the Court may rely upon facts alleged in the complaint, documents attached to it or incorporated by reference, or documents that are "integral" to the complaint. *Weiss v. Incorp. Village of Sag Harbor*, 762 F.Supp.2d 560, 567 (E.D.N.Y. 2011).  The Court may consider "documents or information contained in defendant's motion papers, if plaintiff has knowledge or possession of the material and relied on it in framing the complaint[.] *Id*.

[7] Defendants did not present any argument suggesting that the February 2018 search was not an adverse action.

14

property states a plausible claim for retaliation sufficient to withstand dismissal." *Funches v. Russo*, No. 9:17-CV-1292 (LEK/DJS), 2018 WL 6381058, at *4 (N.D.N.Y. Dec. 6, 2018) (collecting cases) (allowing the plaintiff to proceed with a retaliation claim based upon the defendant's cell search premised on grievances he filed because there is no indication that his confiscated property, a hot pot, was contraband); *Yunus v. Jones*, No. 9:16-CV-1282 (GTS/ATB), 2019 WL 4010260, at *6 (N.D.N.Y. Aug. 26, 2019) (noting that the "[d]efendants' argument ignores the fact that the adverse action asserted by Plaintiff is not merely the cell search but the purported wrongful confiscation of his personal property in his cell.").

Here, the Complaint lacks any facts suggesting that Laster's March 2018 search resulted in the confiscation of any personal property. *See* Compl. at 20-21. Plaintiff does not offer any argument in opposition to Defendants' motion to dismiss the retaliation claim against Laster related to the March 2018 search. "In this District, when a non-movant willfully fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a 'modest' burden." *Dixon v. Office of New York State Comptroller*, No. 1:16-CV-1184 (GTS/DEP), 2017 WL 4357461, at *12 (N.D.N.Y. Sept. 29, 2017) (citing *inter alia* N.D.N.Y.L.R. 7.1(b)(3)). Thus, the undersigned recommends granting Defendants' motion to dismiss Plaintiff's retaliation claim against Laster based upon the March 2018 search.

### 2. Claims Against Oliver and Riley

In the March Order, the Court directed Riley and Oliver to respond to Plaintiff's retaliation claims based upon incidents that occurred in April 2018. *See* Dkt. No. 11 at 27. Defendants

15

argue that Plaintiff's retaliation claims against Riley and Oliver must be dismissed because Plaintiff failed to allege that Riley was motivated by any protected speech and further, that the pat frisks did not constitute an adverse action.  *See* Dkt. No. 33-1 at 9.

As discussed *supra*, Plaintiff filed a grievance related to the use of force incident on December 9, 2017.  *See* Dkt. No. 1-1 at 71.  While Plaintiff did not refer to Riley by name in his grievance, the exhibits annexed to the Complaint suggest that Plaintiff grieved Riley and the actions he took that day.  *See id.*  Notably, in a written decision, CORC accepted the grievance, in part, and referred to an investigation involving "CO R".  *See id.* at 78.  CORC reported, "that CO R . . . pat frisked the grievant outside the messhall on 12/9/17 and denies assaulting him."  *Id.*  Accordingly, the Court finds that Plaintiff plead that he engaged in constitutionally protected conduct related to Riley and Oliver, sufficient to satisfy the first element of the retaliation analysis.

With respect to the adverse action, Plaintiff alleges that Oliver forced Plaintiff to remove his shoes and stand on the "freezing floor" in the presence of others, with the intent to humiliate Plaintiff.  *See* Compl. at 21; Dkt. No. 1-2 at 68.  Plaintiff also alleges that Riley searched Plaintiff "little by little" and directed Plaintiff "to pass every item of clothes [sic] to him, till the plaintiff was naked[.]"  *See* Compl. at 22.  Riley then directed Plaintiff to "turn around and spread his ass cheeks" and cough with the intent to humiliate Plaintiff in front of other officers.  *See id.*  Riley also confiscated Plaintiff's winter gloves and scarf without issuing a contraband slip.  *See id.* at 23.

Assuming the truth of Plaintiff's claims, the Court finds that Plaintiff has sufficiently alleged that Defendants' actions on April 5, 2018 and April 6, 2018 were adverse.  *See*

*Yunus v. Jones*, No. 9:16-CV-1282 (GTS/ATB), 2017 WL 9511176, at *12 (N.D.N.Y. Aug. 23, 2017), *report and recommendation adopted*, 2017 WL 5956762 (N.D.N.Y. Dec. 1, 2017) (allowing the plaintiff to proceed with retaliation claim, based upon strip frisk and allegations that the defendant made statements in reference to grievances); *see also Morales v. Foster*, No. 17-CV-234, 2019 WL 441967, at *6 (D.N.H. Jan. 3, 2019) (finding that the "slow and humiliating manner" in which the defendants conducted a search sufficiently alleges adverse action).[8]

With respect to a causal connection, "[i]n assessing temporal proximity the Second Circuit has established that no more than six months between the protected activity and the adverse action establishes the temporal proximity sufficient to support an inference of causal connection." *Hayes v. Dahkle*, 16-CV-1368, 2017 WL 9511178, at *9 (N.D.N.Y. Oct. 30, 2017) (citation omitted).  Here, Plaintiff filed his grievance in December 2017 and the adverse actions occurred in April 2018.  Thus, the temporal proximity suggests a causal connection.  *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (finding that the passage of six months between the protected speech and the adverse action was sufficient to raise the inference of a causal connection).

Accordingly, the undersigned recommends that Defendants' motion to dismiss Plaintiff's

---

[8]  In the Memorandum of Law, Defendants misinterpret the holding of *Yunus*.  Defendants state that, in *Yunus,* the court held that "[i]nmate-plaintiff's allegation that he was subjected to a strip frisk by defendant in order to embarrass and humiliate plaintiff was insufficient to establish a First Amendment retaliation claim[.]" *See* Dkt. No. 33-1 at 10.  In *Yunus,* which was decided on summary judgment, the court assumed for the sake of argument, that the alleged strip frisk by defendant amounted to an adverse action, but found that the plaintiff's evidence as to causal connection was "purely speculative" and thus, could not withstand summary judgment. *Yunus,* 2019 WL 5196982, at *8.  Indeed, the court noted that "[a]lthough courts within the Second Circuit have held that 'a routine and ordinary lawful strip search' does not qualify as an adverse action, it has also been determined that a 'strip search in front of other inmates' could be unreasonable and a violation of the inmate's constitutional rights.  *Id*. (citations and internal citations omitted).

retaliation claims against Riley and Oliver be denied.

### 3. Claims Against Mauro and Smith

In the March Order, the Court directed Mauro and Smith to respond to Plaintiff's retaliation claims. *See* Dkt. No. 11 at 27. Defendants move to dismiss these claims arguing that Mauro and Smith were not personally involved in the constitutional violations. *See* Dkt. No. 33-1 at 11-12.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).

If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21

F.3d at 501.  In other words, supervisory officials may not be held liable merely because they held a position of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).

In a recent case, *Tangreti v. Bachmann*, the Second Circuit addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability.[9] *Id.*, 2020 WL 7687688 (2d Cir. 2020).  In *Tangreti*, the plaintiff was sexually abused by correctional officers at York Correctional Institute in 2014 and argued that the defendant, a counselor supervisor, violated the Eighth Amendment by exhibiting deliberate indifference to the risk of sexual abuse by the officers.  *Id.* at *2, 3.  Consistent with other circuits, the court

---

[9]  Because *Tangreti* was decided after the within motion was fully briefed, the Court issued the following Text Order:

> In light of the Second Circuit's recent decision in *Tangreti v. Bachmann*, 2020 WL 7687688 (2d Cir. 2020), the Court will provide the parties additional time to file briefs addressing the holding of Tangreti as it may pertain to the claims asserted against Mauro and Smith. The supplement briefs shall not exceed five (5) pages in length. Defendants' brief is due on or before 2/13/2021; and Plaintiff's brief is due on or before 3/3/2021. The Clerk of the Court is directed to mail a copy of this text order to Plaintiff with a copy of the *Tangreti* decision.

Dkt. No. 40.

On February 9, 2021, Defendant filed a supplemental brief.  Dkt. No. 41.  Plaintiff did not respond to the Text Order.

concluded that "there is no special rule for supervisory liability" and held that a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.' " *Id*. at *6. Therefore, to avoid summary judgment, the plaintiff had to establish that the defendant violated the Eighth Amendment by her "own conduct, not by reason of [her] supervision of others who committed the violation" and could not "rely on a separate test of liability specific to supervisors." *Id*.

District courts discussing *Tangreti* agree that the decision invalidated the *Colon* test and mandates that a plaintiff must establish a violation against the supervisory official directly. *Atkinson v. Okocha*, No. 20-CV-4497, 2021 WL 40258 (E.D.N.Y. Jan. 5, 2021); *see also Cook v. Dubois*, No. 19-CV-8317, 2021 WL 91293, at *4 (S.D.N.Y. Jan. 11, 2021); *see also Rodriguez v. McCormick*, No. 3:20-CV-01019, 2021 WL 83503, at *4 (D. Conn. Jan. 11, 2021).

In the Complaint, Plaintiff alleged that Mauro and Smith were personally involved because they failed to remedy ongoing First Amendment violations after becoming aware of the retaliation through grievances and appeals. *See* Compl. at 34-35; Dkt. No. 39 at 7. Plaintiff attempts to couch Defendants' liability within the now-overruled scope of supervisory liability as set forth in *Colon*. As noted, above, however, *Tangreti* makes it clear that, to establish a constitutional violation against a supervisor, the plaintiff "must plead and prove that [the supervisor-]defendant, through [his] own individual actions, has violated the constitution." *Tangreti*, 2020 WL 7687688, at *6 (internal quotation marks omitted). In light of *Tangreti*, Plaintiff's attempt to plead personal involvement based upon the denial of a grievance and/or appeals, lacks merit because it does not plausibly suggest "[t]he factors

20

necessary to establish" a First Amendment retaliation claim.

Accordingly, to the extent that Plaintiff attempts to impose liability upon Mauro and Smith based on their supervisory positions, the undersigned recommends that those claims be dismissed.

### C. Leave to Amend

Ordinarily, a court should not dismiss a complaint filed by a pro se litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704–05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires.").  In light of his pro se status, prior to outright dismissal, it is my recommendation that Plaintiff be given an opportunity to amend his Complaint with respect to his claims that have been dismissed.  *See Simmons v. Abruzzo*, 49 F.3d 83, 86-87 (2d Cir. 1995).

### IV.  CONCLUSION

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED** that Defendants' motion to dismiss based upon Fed. R. Civ. P. 12(b)(6) (Dkt. No. 33) be **GRANTED** as to the following:

(1) Plaintiff's retaliation claim against Laster based upon the March 2018 search; and

(2) Plaintiff's retaliation claims against Mauro and Smith;

**RECOMMENDED** that Defendants' motion to dismiss based upon Fed. R. Civ. P. 12(b)(6) (Dkt. No. 33) be **DENIED** in all other respects; and it is further;

**ORDERED** that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[10] days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Date:  March 10, 2021
       Binghamton, NY

Miroslav Lovric
U.S. Magistrate Judge

---

[10] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(c).