UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EDERICK FABRIZIO, also known as
EDERICK FABRICIO,

                          Plaintiff,

                                                            9:20-CV-0011
v.                                                          (GTS/ML)

C.O. RIELLY;[1] C.O. OLIVER; and C.O.
LASTER,

                          Defendants.
_____

APPEARANCES:                          OF COUNSEL:

EDERICK FABRIZIO
  *Pro se* Plaintiff
Calle 13-A DD7
Villa del Rey IV
Caguas, PR 00727

LETITIA A. JAMES                      STEVE NGUYEN, ESQ.
New York State Attorney General       Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, New York 12224


MIROSLAV LOVRIC, United States Magistrate Judge

_____

[1]      In Defendants' motion for summary judgment (Dkt. No. 60, Attach. 2), Defendants
represented to the Court that the defendant referred to by Plaintiff as "C.O. Riley" is actually
"C.O. Rielly."  This representation is consistent with counsel's acknowledgment of service and
notice of appearance for this defendant.  (Dkt. Nos. 19, 21.)  As a result, the Clerk of the Court is
directed to amend the docket sheet accordingly.  Any reference in the Complaint (Dkt. No. 1) to
"C.O. Riley" shall be deemed to refer to "C.O. Rielly."

## ORDER and REPORT-RECOMMENDATION[2]

Currently before the Court, in this civil rights action filed by Ederick Fabrizio ("Plaintiff") against C.O. Rielly, C.O. Oliver, and C.O. Laster (collectively "Defendants"), is Defendants' motion for summary judgement pursuant to Fed. R. Civ. P. 56. (Dkt. No. 60.) For the reasons set forth below, I recommend that Defendants' motion for summary judgement be granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

At this juncture, Plaintiff alleges the following four claims: (1) one claim of excessive force in violation of the Eighth Amendment and 42 U.S.C. § 1983 against Defendants Rielly and Oliver based on an incident that occurred on December 9, 2017; (2) a claim of retaliation in violation of the First Amendment and 42 U.S.C. § 1983 against Defendant Laster based on an incident that occurred on February 16, 2018; (3) a claim of retaliation in violation of the First Amendment and 42 U.S.C. § 1983 against Defendant Oliver based on an incident that occurred on April 5, 2018; and (4) a claim of retaliation in violation of the First Amendment and 42 U.S.C. § 1983 against Defendant Rielly based on an incident that occurred on April 6, 2018. (*See generally* Dkt. Nos. 42, 46.)

---

[2]    This matter has been referred to the undersigned for a Report and Recommendation by the Honorable Glenn T. Suddaby, United States District Judge.

## B.    Defendants' Statement of Undisputed Facts

Unless otherwise noted, the following facts were asserted and supported by Defendants in their Statement of Material Facts and not denied by Plaintiff in his response.  (*Compare* Dkt. No. 60, Attach. 1 [Defs.' Statement of Material Facts], *with* Dkt. No. 66 [Pl.'s Resp.].)[3]

1.    At all relevant times, Plaintiff was an incarcerated individual in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").

2.    On January 6, 2020, Plaintiff commenced this action against DOCCS employees, pursuant to 42 U.S.C. § 1983.

3.    Plaintiff's remaining claims include (a) one excessive force claim against Defendants Rielly and Oliver, and (b) three retaliation claims against Defendants.

4.    At all relevant times, Defendants were corrections officers employed by DOCCS who worked at the Greene Correctional Facility ("Greene CF").[4]

5.    Plaintiff's excessive force claim against Defendants Rielly and Oliver relates to an incident that occurred on December 9, 2017.

---

[3]    In accordance with Local Rule 56.1(a), Defendants submitted a Statement of Material Facts ("L.R. 56.1 Statement"), setting forth concise factual assertions supported by specific record citations in individually numbered paragraphs.  (*See* Dkt. No. 60, Attach. 1.)  Instead of directly answering the L.R. 56.1 Statement, Plaintiff provided responses mirroring the individually numbered paragraphs contained in Defendants' supporting declarations.  (*See* Dkt. No. 66, pp. 5-8, 11.)  Moreover, Plaintiff's responses to the numbered paragraphs in Defendants' supporting declarations failed to provide specific record citations supporting any purported factual disputes, as required by Local Rule 56.1(b).  (*See id.*)  In light of Plaintiff's *pro se* status, where Defendants cited to a declaration in support of the fact asserted, the Court considered Plaintiff's response to the portion of the declaration cited.

[4]    Although Defendants failed to include a record citation in support of this asserted fact, there is support in the record for it.  (Dkt. No. 60, Attach. 2 at ¶ 3; Dkt. No. 60, Attach. 3 at ¶ 3; *see generally* Dkt. No. 60, Attach. 4.)

6.      On December 9, 2017, around 5 p.m., Defendant Rielly observed Plaintiff stop movement to speak with another incarcerated individual.

7.      Defendant Rielly gave Plaintiff several direct orders to keep moving, but Plaintiff did not comply.[5]

8.      To restore order, Defendant Rielly pulled Plaintiff aside and conducted a pat frisk.[6]

---

[5]      Defendants cite to the affidavit of Defendant Rielly in support of this statement of material fact. (Dkt. No. 60, Attach. 1 at ¶ 6 [citing Dkt. No. 60, Attach. 2 at ¶¶ 9-10].) As set forth above in note 3, although Plaintiff responds to paragraph 10 of the declaration of Defendant Rielly with the single word, "[d]isagree," he fails to include a citation to the record to support his contention that the assertion is in dispute. (Dkt. No. 66 at 7, ¶ 10.) As a result, the fact is deemed admitted. Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."); N.D.N.Y. L.R. 7.1(a)(3) ("The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying *each* of the movant's assertions in matching numbered paragraphs.") (emphasis added); *N.Y. Teamsters v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (upholding grant of summary judgment where "[t]he district court, applying Rule 7.1[a][3] strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1[a][3] statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations"); *Prindle v. City of Norwich*, 15-CV-1481, 2018 WL 1582429, at *2 n.2 (N.D.N.Y. Mar. 27, 2018) (Suddaby, C.J.) ("In this portion of his Rule 7.1 Response, Plaintiff made a blanket denial of all of the facts in the corresponding paragraph of Defendants' Rule 7.1 Statement but cited a portion of the record that disputed only one of the facts asserted by Defendants, in violation of the District's Local Rules of Practice."); *Jamison v. Metz*, 865 F. Supp. 2d 204, 207 n.1 (N.D.N.Y. 2011) (Suddaby, J.) ("[W]herever [the *pro se*] Plaintiff has [wilfully] failed to cite record evidence in support of his denials of properly supported facts . . . the Court has deemed such facts admitted to the extent they are not clearly in dispute."), *rev'd in part on other grounds*, 541 F. App'x 15, 17-19 (2d Cir. 2013).

[6]      *See*, *supra*, note 3. Although Plaintiff responds to paragraph numbers 11-12 of the declaration of Defendant Rielly with the word "disagree" (Dkt. No. 66 at 7, ¶¶ 11-12), he fails to include a citation to the record to support his contention that the assertions contained therein are in dispute. As a result, the fact is deemed admitted.

9.      For safety purposes, Defendant Oliver observed Defendant Rielly's pat frisk.[7]

10.     The search was compliant with DOCCS policy and Defendant Rielly used no more force than was necessary to detect contraband.[8]

11.     The search was completed without incident and Plaintiff returned to his dorm.[9]

12.     On December 11, 2017, Plaintiff was examined by medical staff and an inmate injury report was recorded.

13.     During that examination, the nurse did not observe any visible injuries on Plaintiff.  In addition, Plaintiff denied sustaining any injuries.

14.     On December 12, 2017, Plaintiff filed a grievance alleging that Defendants Rielly and Oliver assaulted him.

15.     Plaintiff alleges First Amendment retaliation claims against Defendants.

16.     Plaintiff's retaliation claim against Defendant Laster pertains to his grievance filed in December 2017, and the alleged confiscation of his notepad on February 16, 2018.

---

[7]      *See*, *supra*, note 3.  Although Plaintiff responds to paragraph numbers 9-10, 14 of the declaration of Defendant Oliver with the word "disagree" (Dkt. No. 66 at 5, ¶¶ 9-10, 14), he fails to include a citation to the record to support his contention that the assertions therein are in dispute.  As a result, the fact is deemed admitted.

[8]      *See*, *supra*, note 3.  Although Plaintiff responds to paragraph number 12 of the declaration of Defendant Oliver and paragraph numbers 12-13 of the declaration of Defendant Rielly with the word "disagree" (Dkt. No. 66 at 5, ¶ 12; Dkt. No. 66 at 7, ¶¶ 12-13), he fails to include a citation to the record to support his contention that the assertions therein are in dispute. As a result, the fact is deemed admitted.

[9]      *See*, *supra*, note 3.  Although Plaintiff responds to paragraph numbers 11 and 13 of the declaration of Defendant Oliver and paragraph number 14 of the declaration of Defendant Rielly with the word "disagree" (Dkt. No. 66 at 5, ¶¶ 11, 13; Dkt. No. 66 at 7, ¶ 14), he fails to include a citation to the record to support his contention that the assertions therein are in dispute.  As a result, the fact is deemed admitted.

17.     Plaintiff testified that before February 16, 2018, he had no issues with Defendant Laster.

18.     On February 16, 2018, at 10:30 a.m., Defendant Laster conducted a random search of Plaintiff's cube.

19.     Defendant Laster found two items of contraband, which were recorded on a contraband receipt. Defendant Laster gave Plaintiff a copy of the contraband receipt.

20.     Defendant Laster avers that at no point on February 16, 2018, did she find, confiscate, or make comments about a notepad.

21.     Defendant Laster avers that she was not aware of Plaintiff's grievance activity.

22.     Plaintiff's retaliation claim against Defendant Oliver pertains to his grievance filed in December 2017, and an alleged pat frisk on April 5, 2018.

23.     On April 5, 2018, Defendant Oliver worked the North Yard.

24.     At no point on April 5, 2018, did Defendant Oliver pat frisk Plaintiff or direct him to remove his shoes.[10]

25.     Defendant Oliver contends that he was not aware of Plaintiff's grievance activity.[11]

26.     Plaintiff's retaliation claims against Defendant Rielly pertains to his grievance filed in December 2017, and an alleged strip search on April 6, 2018.

---

[10]     *See*, *supra*, note 3.  Although Plaintiff responds to paragraph number 20 of the declaration of Defendant Oliver with the word "disagree" (Dkt. No. 66 at 5, ¶ 20), he fails to include a citation to the record to support his contention that the assertions therein are in dispute. As a result, the fact is deemed admitted.

[11]     *See*, *supra*, note 3.  Although Plaintiff responds to paragraph number 21 of the declaration of Defendant Oliver with the word "disagree" (Dkt. No. 66 at 5, ¶ 21), he fails to include a citation to the record to support his contention that the assertions therein are in dispute. As a result, the fact is deemed admitted.

27.    Defendant Rielly contends that at no point on April 6, 2018, did he ride in a van with Plaintiff, conduct a strip search, or confiscate Plaintiff's gloves and scarf.[12]

28.    Defendant Rielly contends that he was not aware of Plaintiff's grievance activity.[13]

### C.    Parties' Arguments

#### 1.    Defendants' Memorandum of Law

Generally, Defendants argue that Plaintiff's remaining claims fail as a matter of law based on the record evidence.  (Dkt. No. 60, Attach. 6 at 3.)  More specifically, with respect to Plaintiff's excessive force claim against Defendants Rielly and Oliver, Defendants acknowledge that force was used upon Plaintiff, but contend that it was necessary to maintain order in light of Plaintiff's behaviors—that is, "stop[ping] movement" in an "elevated traffic" area and the "suspicious interaction" with another inmate.  (*Id.* at 14.)  Defendants argue that Plaintiff's alleged injuries are de minimis and thus demonstrate that the use of force was "insufficient to rise to a level of constitutional violation."  (*Id.* at 15.)  In the alternative, Defendants contend that they are entitled to qualified immunity.  (*Id.* at 15-16.)

With respect to Plaintiff's retaliation claim against Defendant Oliver, Defendants argue that (1) Defendant Oliver was not personally involved in the alleged pat frisk on April 5, 2018, (2) a pat frisk is not an adverse action and Plaintiff suffered no more than a "few minutes" of

---

[12]    *See*, *supra*, note 3.  Although Plaintiff responds to paragraph number 18 of the declaration of Defendant Rielly with the word "disagree" (Dkt. No. 66 at 7, ¶ 18), he fails to include a citation to the record to support his contention that the assertions therein are in dispute. As a result, the fact is deemed admitted.

[13]    *See*, *supra*, note 3.  Although Plaintiff responds to paragraph number 19 of the declaration of Defendant Rielly with the word "disagree" (Dkt. No. 66 at 7, ¶ 19), he fails to include a citation to the record to support his contention that the assertions therein are in dispute. As a result, the fact is deemed admitted.

discomfort standing on the cold ground, and (3) there is no evidence of a causal connection between Plaintiff's protected conduct in December 2017, and the incident on April 5, 2018. (Dkt. No. 60, Attach. 6 at 7-10.)  With respect to Plaintiff's retaliation claim against Defendant Rielly, Defendants argue that (1) even if true, Defendant Rielly's strip search was not adverse, (2) Defendant Rielly was not involved in Plaintiff's missing gloves and scarf, and (3) there is no evidence of a causal connection between Plaintiff's protected conduct in December 2017, and the incident on April 6, 2018.  (Dkt. No. 60, Attach. 6 at 10-12.)  Finally, Defendants argue that Plaintiff has presented no evidence as to why Defendant Laster would retaliate against him based on a grievance he filed against other officers.  (*Id.* at 12.)

## 2. Plaintiff's Opposition

In response, Plaintiff argues that his claims are "well supported" by record evidence and that there are material issues of fact precluding summary judgment.  (Dkt. No. 66 at 3.)  Plaintiff indicates that he has satisfied the both the objective and subjective elements necessary for an Eighth Amendment excessive force claim from December 2017.  (*Id.*)  Likewise, Plaintiff asserts that his First Amendment claims stemming from February 2018 and April 2018 show that he engaged in protected conduct and that Defendants took adverse action against him in response.[14] (*Id.*)

---

[14]    Plaintiff also contends that he has not been able to review certain alleged evidence in connection with this action, specifically "the entire file from the Office of Special Investigations."  (Dkt. No. 66 at 3.)  However, discovery in this matter closed on January 28, 2022, Plaintiff did not subsequently file a motion to compel production, and Plaintiff has not filed an affidavit or declaration pursuant to Fed. R. Civ. P 56(d).  (*See* Dkt. No. 59.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing A Motion For Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[15] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-

---

[15]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

movant is proceeding *pro se*.[16]  (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[17]  As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[18]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 56.1.  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1(b) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

---

[16]    *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[17]    *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

[18]    *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that

statement[19]–even when the non-movant was proceeding *pro se*.[20]

Similarly, in this District, where a non-movant has willfully failed to respond to a

movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed

to have "consented" to the legal arguments contained in that memorandum of law under Local

Rule 7.1(a)(3).[21]  Stated another way, when a non-movant fails to oppose a legal argument

asserted by a movant, the movant may succeed on the argument by showing that the argument

possesses facial merit, which has appropriately been characterized as a "modest" burden.  *See*

N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined

that the moving party has met its burden to demonstrate entitlement to the relief requested

therein . . . .");  *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct.

30, 2009) (Suddaby, J.) (collecting cases);  *Este-Green v. Astrue*, 09-CV-0722, 2009

WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

---

[19]    Among other things, Local Rule 56.1 (previously Local Rule 7.1[a][3]) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 56.1.

[20]    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.").

[21]    *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1(a)(3) (previously Local Rule 7.1[b][3]); *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

**B.    Legal Standard Governing Excessive Force Claims**

The Eighth Amendment prohibits cruel and unusual punishment, "including the 'unnecessary and wanton infliction of pain'" against prisoners.  *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  To succeed on an Eighth Amendment excessive force claim, "an inmate must prove two components, one subjective and the other objective."  *Romaine v. Rawson*, 140 F. Supp. 2d 204, 210-11 (N.D.N.Y. 2001) (Kahn, J.) (citing *Hudson v. McMillan*, 503 U.S. 1, 7-8 (1992); *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)).  "The subjective component focuses on the defendant's motive for his conduct [whereas] [t]he objective component focuses on the conduct's effect in light of contemporary standards of decency."  *Romaine*, 140 F. Supp. 2d at 211 (citing *Blyden*, 186 F.3d at 262).

More specifically, relative to the subjective test, there must be a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness.'"  *Blyden*, 186 F.3d at 262 (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)).  "Wantonness" turns on "whether the force was applied in a good-faith effort to restore discipline, or maliciously and sadistically to cause harm."  *Sims*, 230 F.3d at 20 (quoting *Hudson*, 503 U.S. at 7); *see also Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997) (stating that where "no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may . . . be sufficient evidence of a culpable state of mind."). Additionally, the court must "evaluate the need for the application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 8 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

Furthermore, the objective component of the test is "context specific, turning on contemporary standards of decency." *Blyden*, 186 F.3d at 263 (quoting *McMillian*, 503 U.S. at 8). The focus is "on the harm done; but the amount of harm that must be shown depends on the nature of the claim." *Sims*, 230 F.3d at 21 (citing *Hudson*, 503 U.S. at 8). Indeed, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Sims*, 230 F.3d at 22 (citations and internal quotations omitted); *see also Romaine*, 140 F. Supp. 2d at 212 (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993); *Hudson*, 503 U.S. at 10 ("[A]n allegation that indicates only a de minimis use of force will 'rarely suffice to state a constitutional claim' . . . unless the force is the 'sort repugnant to the conscience of mankind[.]'").

### C.    Legal Standard Governing Retaliation Claims

"To prevail on a First Amendment retaliation claim, an inmate must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action." *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020) (cleaned up). As the Second Circuit has repeatedly cautioned, "[c]ourts properly approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)); *see also Phelps v. Kapnolas*, 308 F.3d 180, 187 n. 6 (2d Cir. 2002).

"[T]he use of the prison grievance system" is constitutionally protected conduct under the First Amendment. *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004); *see Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (holding that "retaliation against a prisoner for pursuing a grievance violates the right to petition the government for redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983."). Furthermore, "adverse action" for the purposes of a retaliation claim has been defined as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights . . . [o]therwise the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection." *Davis*, 320 F.3d at 353 (citing *Dawes*, 239 F.3d at 493).

To establish a causal connection between protected activities and the adverse action, the court may consider a number of factors, including "(1) the outcome of any hearing concerning the allegedly retaliatory charges; (2) the inmate's prior disciplinary record; (3) any statements made by the defendant concerning his motivation; and[] (4) the temporal proximity between the protected activity and the defendant's adverse action." *Williams v. Muller*, 98-CV-5204, 2001 WL 936297, at *3 (S.D.N.Y. Aug. 17, 2001) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) *abrogated, in part, on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d 2020)). However, with respect to temporal proximity at the summary judgment stage, the Second Circuit has "consistently required some further evidence of retaliatory animus before permitting a prisoner to proceed to trial on a retaliation claim." *Washington v. Afify*, 681 F. App'x 43, 46 (2d Cir. 2017).

### III.    ANALYSIS

### A.    Plaintiff's Excessive Force Claims Against Defendants Rielly and Oliver

After carefully considering the matter, I recommend that the Court grant Defendants'

motion for summary judgment with respect to Plaintiff's excessive force claims against

Defendants Rielly and Oliver for the reasons stated in Defendants' memorandum of law.  (Dkt.

No. 60, Attach. 6 at 13-16.)  The Court has considered the record evidence, not only in a light

most favorable to Plaintiff as the non-moving party, but also in consideration of the special

solicitude afforded to *pro se* litigants.  *See Triestman v. Federal Bureau of Prisons*, 470 F.3d

471, 477 (2d Cir. 2006) (citations omitted).  Nonetheless, even a non-moving *pro se* litigant

"must offer some hard evidence showing that [his] version of the events is not wholly fanciful."

*Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (citations omitted).  Plaintiff has

failed in this regard.

In light of the undisputed facts regarding the incident on December 9, 2017, it would be

reasonable for any corrections officer—in this case Defendant Rielly—"charged with directing

incarcerated individuals back to their dorms after chow time," to initiate at least a pat frisk of

Plaintiff in connection with his suspicious behavior and interaction with another inmate.  (Dkt.

No. 60, Attach. 2 at ¶ 8); *see e.g., Alcaide v. Smith*, 17-CV-1239, 2019 WL 4621963, at *3

(N.D.N.Y. Sept. 24, 2019) (Suddaby, C.J.) (finding that the defendant "possessed reasonable

suspicion to initiate a pat-frisk" where the plaintiff was perceived "to be 'acting suspiciously'

while in the line returning from the mess hall."); *Pizarro v. Bd. of Corrections*, 16-CV-2418,

2018 WL 3462512, at *6 (S.D.N.Y. Jul. 17, 2018) (quoting *Hudson*, 468 U.S. at 529) ("[T]he

Supreme Court has held that 'wholly random searches are essential to the effective security of

penal institutions[.]'").

Plaintiff was undisputedly "grabbed," placed against a fence, and forcefully searched for contraband. (Dkt. No. 60, Attach. 1 at ¶ 8; Dkt. No. 60, Attach. 5 at 69; Dkt. No. 1 at ¶ 54.) At this juncture, however, the Court rejects Plaintiff's argument that Defendants lacked "a legal basis to use force against him." (*See* Dkt. No. 1 at ¶ 54.) It is well settled that searching or "frisking" a prisoner necessarily requires using some measure of force and, as a necessary security precaution, courts in this circuit have recognized that corrections officers may conduct "random pat frisks on free movement inmates going to or coming from services and programs[.]" *Houston v. Coveny*, 14-CV-6609, 2020 WL 1151345, at *5 (W.D.N.Y. Mar. 9, 2020) (citing *Tavares v. City of N.Y.*, 08-CV-3782, 2011 WL 5877550, at *6 (S.D.N.Y. Oct. 17, 2011) (record citations omitted)). Nevertheless, the Court must still consider the relationship between Defendants' perceived need to use force and the amount of force actually used on Plaintiff. *See Hudson*, 503 U.S. at 8 (citation omitted).

While the lack of serious injury is not dispositive, it is particularly relevant in this case because there is no genuine dispute that force was used during an authorized search. *See Hudson*, 503 U.S. at 7 ("The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."). Plaintiff alleges merely that he initially "felt dizzy" and that when he returned to his dorm bathroom, he saw a "laceration" on his forehead, which "fade[d] away" within a day or two. (Dkt. No. 1 at 76; Dkt. No. 60, Attach. 5 at 75-76.) The Court accepts Plaintiff's characterizations that his feet were "kicked" apart, that his head was "pushed" and "rubbed" against the fence, and that he was "smacked" at the bottom of his face during the search; however, considering that Plaintiff was undisputedly interrupting a high traffic area and perceived to be acting suspiciously, and considering the lack of any significant injuries, it cannot be said that the force applied was objectively unreasonable. *See e.g., Robinson v. Henschel*, 10-

CV-6212, 2014 WL 1257287, at *6 (S.D.N.Y. Mar. 26, 2014) ("Accepting [the p]laintiff's description of his hand being 'slammed' repeatedly against the wall, the amount of force [the defendant] applied in doing so was *de minimus*."); *Taylor v. N.Y. Dep't of Corr.*, 10-CV-3819, 2012 WL 2469856, at *5 (S.D.N.Y. Jun. 27, 2012) (quoting *Hudson*, 503 U.S. at 9-10) ("A correction officer's forcing an inmate's face into a prison wall, though clearly unpleasant to endure, would not appear 'repugnant to the conscience of mankind.'"); *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 507 (S.D.N.Y. 2012) (collecting cases) (stating that "where, as here, a plaintiff alleges only a degree of roughness that is common in prison contexts, and has not claimed a lasting or even fleeting injury from the defendant's conduct, courts in this circuit have routinely held that such conduct is insufficiently serious to support an Eighth Amendment claim."); *Espinal v. Goord*, 00-CV-2242, 2001 WL 476070, at *13 n. 46 (S.D.N.Y. May 7, 2001) ("[A]llegations that [officer] hit [inmate] two or three times in the face, causing his face to turn red, but resulting in no other injuries . . . are insufficient to state an Eighth Amendment claim."); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 471 (S.D.N.Y. 1998) (("[A]lthough kicking an inmate's ankles and feet cannot be condoned, this use of force is *de minimus* and insufficient to rise to the level of a constitutional violation.");.

To the extent that Plaintiff alleges Defendants stated "I hate that they got all this [sic] cameras around, all this [sic] people looking," such a statement does not elevate an otherwise reasonable use of force to the level of sadistic or malicious conduct in violation of the Eighth Amendment.  (*See* Dkt. No. 1 at ¶ 54.)  When viewed in a light most favorable to Plaintiff, the statement implies that, but for the cameras and the would-be witnesses walking around in the area, Defendants may have inflicted further punishment upon Plaintiff for his actions.  While I do not condone Defendants' alleged statements, under the circumstances of this case, the conduct

falls short of a constitutional violation considering the legitimate penological goal in searching Plaintiff in connection with his suspicious behaviors and maintaining order in a high traffic area.

In the alternative, for the reasons set forth in Defendants' memorandum of law, I recommend that the Court grant Defendants' motion for summary judgment with respect to Plaintiff's excessive force claims against Defendants Rielly and Oliver based on the doctrine of qualified immunity. (*See* Dkt. No. 60, Attach. 6 at 15-16.)

Accordingly, I recommend that Plaintiff's Eighth Amendment excessive force claims against Defendants Rielly and Oliver be dismissed.

**B.      Plaintiff's Retaliation Claims Against Defendants Rielly, Oliver, and Laster**

After carefully considering the matter, I recommend that the Court grant Defendants' motion for summary judgment with respect to Plaintiff's retaliation claims against Defendants Rielly and Oliver and deny Defendants' motion for summary judgment with respect to Plaintiff's retaliation claim against Defendant Laster.

**1.      February 16, 2018 (Defendant Laster)**

For purposes of this Report and Recommendation, it is assumed (without deciding) that the record contains sufficient evidence with respect to the first two prongs of Plaintiff's First Amendment retaliation claim against Defendant Laster because Defendants did not move on those bases. More specifically, Plaintiff's litigation activities and grievances against numerous officials at Greene CF constitute protected conduct. *See Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001) (holding that a grievance is constitutionally protected conduct); *Graham*, 89 F.3d at 80 (holding that the "filing of a grievance and attempt to find inmates to represent [other] grievants—is constitutionally protected."). Moreover, while a cell search generally does not constitute an adverse action in the context of a First Amendment retaliation claim, it is well-

established that the unwarranted confiscation of a prisoner's property does; thus, the alleged

taking of Plaintiff's notepad is a sufficiently adverse action. *Yunus v. Jones*, 16-CV-1282, 2019

WL 5196982, at \*6 (Baxter, M.J.) (N.D.N.Y. Jun. 21, 2019), *report recommendation adopted by*

2019 WL 4010260 (N.D.N.Y. Aug. 26, 2019) (Suddaby, C.J.).

Although Defendant Laster attests that she did not confiscate or make comments about

Plaintiff's notepad on February 16, 2018, and that she was unaware of Plaintiff's grievance

activity (Dkt. No. 60, Attach. 4 at ¶¶ 13-14), crediting Plaintiff's allegations in their full context,

as the Court must, I find that a genuine dispute of material fact exists regarding the causal

connection between Plaintiff's protected conduct and Defendant Laster's alleged adverse action

on February 16, 2018.

Plaintiff testified to the following events.  On February 16, 2018, Defendant Laster read

Plaintiff's notepad where Plaintiff stored information regarding his grievances and lawsuits.

(Dkt. No. 1 at ¶ 81.)  Defendant Laster asked Plaintiff why he kept the notepad and Plaintiff

responded that it was for his ongoing lawsuits.  (*Id*.)  Later in the day on February 16, 2018,

Defendant Laster made a speech before Plaintiff's dorm that "everybody was walking on egg

shells and that for anything she was going to make sure that they dead the late night."  (*Id*. at ¶

83 [errors in original].)  Defendant Laster directed Plaintiff to "put that in your book if you want

to."  (*Id*. at ¶ 84.)  Later, Defendant Laster went to Plaintiff's cube and asked Plaintiff for his

notepad, stating that the sergeant wanted to see it.  (*Id*. at ¶ 85.)  Defendant Laster then took

Plaintiff's notepad and did not return with it, a contraband slip, or any document indicating that

she had taken the notepad.  (*Id*. at ¶ 86.)

"The fact that there is no evidence that Defendants made a statement of retaliatory intent

is a factor to consider, but that Plaintiff cannot adduce evidence of such a statement is not fatal to

his claim." *Young v. Shipman*, 18-CV-0782, 2020 WL 1329159, at *5 (N.D.N.Y. Mar. 23, 2020) (Sannes, J.) (citing *Gayle v. Gonyea*, 313 F.3d 677, 684 (2d Cir. 2002) (rejecting defendants' argument that plaintiff "failed to meet his evidentiary burden because he has failed to submit direct evidence that the [misbehavior] report was filed as a retaliatory measure"); *see also Vaher v. Town of Orangetown*, 133 F. Supp. 3d 574, 596 (S.D.N.Y. 2015) ("Direct evidence of retaliatory intent is not required" to overcome summary judgment on a First Amendment retaliation claim)).

Moreover, while, as a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant, Plaintiff has adduced evidence that Defendant Laster reviewed then confiscated his notepad, which contained important information regarding the grievances and lawsuits that Plaintiff filed.

Further, "[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citations omitted). No bright line test has been drawn "'to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action.'" *Espinal*, 558 F.3d at 129 (quoting *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001)). The Second Circuit has held that the passage of "only six months" is sufficient to support an inference of a causal connection. *Id.* (citing *Gorman-Bakos*, 252 F.3d at 555 (suggesting the lapse of five months between protected activity and retaliation may show a causal connection)). Here, the alleged adverse action occurred approximately two months after Plaintiff's protected conduct and thus, was within close temporal proximity for purposes of inferring a causal connection.

On this record, I find that Plaintiff has raised a genuine issue of material fact as to whether Plaintiff's protected conduct of, *inter alia*, filing a grievance against Defendants Rielly and Oliver "was a substantial or motivating factor in [Defendant Laster's] decision to" allegedly confiscate Plaintiff's notepad. *See Young v. Shipman*, 2020 WL 1329159, at *5 (finding that the plaintiff had raised a genuine issue of material fact regarding the causal connection where (1) there was close temporal proximity between defendant Shipman's alleged retaliation and plaintiff's grievance against defendant Sawyer, (2) defendant Sawyer endorsed the allegedly false misbehavior report against the plaintiff, and (3) defendants Shipman and Sawyer were allegedly discussing Plaintiff's prior grievance against defendant Sawyer moments before the allegedly retaliatory conduct occurred).

As a result, I recommend that Defendants' motion for summary judgment with respect to Plaintiff's retaliation claim against Defendant Laster be denied.

### 2.     April 5, 2018 (Defendant Oliver)

Plaintiff's retaliation claim against Defendant Oliver regarding the April 5, 2018, pat frisk fails because he was not subjected to a sufficiently adverse action, and because Defendant Oliver was not personally involved in the matter. (Dkt. No. 60, Attach. 5 at 45-46, 86.)

First, courts have found that "pat frisks—even if conducted for retaliatory reasons— cannot constitute adverse action for purposes of a First Amendment claim." *Morgan v. Luft*, 15-CV-0024, 2017 WL 4326082, at *5 (N.D.N.Y. Sept. 28, 2017) (Suddaby, C.J.) (citing *Henry v. Annetts*, 08-CV-0286, 2010 WL 3220332, at *2 (S.D.N.Y. July 22, 2010); *Amaker v. Fischer*, 10-CV-0977, 2014 WL 8663246, at *5 (W.D.N.Y. Aug. 27, 2014)). Although Plaintiff alleged that, during the pat frisk, he and another inmate were forced to remove their shoes and stand on "the freezing cold floor" (Dkt. No. 1 at ¶ 94), he testified that the search lasted only "a few

minutes" (Dkt. No. 60, Attach. 55 at 47-48) and that, after the search was completed, he and the other incarcerated individual put their shoes on and "continued the night." (*Id.* at 48.) Considering that pat frisks are a recognized part of prison life, Plaintiff provides no evidence as to how such additional, temporary discomfort lasting only a few minutes could reasonably deter an inmate from further engaging in First Amendment protected activities. *See Henry*, 2010 WL 3220332, at *2 ("Cell searches and pat frisks are an ordinary part of prison life and would not (and do not) deter the average inmate from continuing to exercise his First Amendment rights.").

Second, the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations and internal quotations omitted). The plaintiff has the burden to demonstrate that the defendant "directly participated[] in the alleged constitutional violation." *Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005).

During his deposition, Plaintiff testified that, before Defendant Oliver's arrival, "another officer" directed Plaintiff and another incarcerated individual to put their hands on the wall and started to pat frisk them. (Dkt. No. 60, Attach. 5 at 45-46.) Plaintiff testified that when Defendant Oliver approached, he made a comment that he had a "similar situation" with Plaintiff in the past. (*Id.* at 45.) Then the other officer ordered Plaintiff and the other incarcerated individual to take their shoes off and continued searching them. (*Id.*, pp. 46-48.) Even if a pat frisk conducted on a cold ground constituted a sufficiently adverse action, Defendant Oliver's only involvement was making a comment that he had a similar situation with Plaintiff in the past. Plaintiff testified that the other officer began the pat frisk before Defendant Oliver mentioned anything about his prior interactions with Plaintiff.

As a result, I recommend that Plaintiff's First Amendment retaliation claim against Defendant Oliver be dismissed.

### 3.    April 6, 2018 (Defendant Rielly)

"Whether a strip search constitutes an adverse action for purposes of a retaliation claim has not been addressed by many courts in this circuit." *Johnson v. Naqvi*, 18-CV-0694, 2021 WL 1723773, at *7 (D. Conn. Apr. 29, 2021).[22]

Recently, retaliatory strip searches were addressed in *Pizarro v. Bd. of Corr.*, 16-CV-2418, 2018 WL 3462512 (S.D.N.Y. July 17, 2018), where District Judge Richard Sullivan concluded that an officer's strip search of an inmate did not qualify as an adverse action where the inmate's entire housing unit underwent the strip search, and thus, the plaintiff was not singled out and had not presented any evidence demonstrating "why a routine and ordinary lawful strip search would deter a typical prisoner from exercising his or her First Amendment rights." *Pizarro*, 2018 WL 3462512, at *6.

In *Johnson v. Naqvi*, 18-CV-0694, 2021 WL 1723773, at *8-9 (D. Conn. Apr. 29, 2021), Senior District Judge Charles Haight concluded that an officer's strip search of an inmate qualified as an adverse action where windows permitted other officers and inmates to view the plaintiff's exposed body during the search and the search was not ordinary or routine—as in *Pizarro*—but instead singled the plaintiff out. *Johnson v. Naqvi*, 2021 WL 1723773, at *8-9.

---

[22]    The term "strip search," as used by the parties, means a search in which the incarcerated individual removes his clothes and an officer visually inspects his body cavities, including the anus. *See* DOCCS Directive No. 4910 at 7. According to DOCCS policy, correction officers can perform a strip search upon determination of probable cause and authorization from a sergeant or higher-ranking officer. *Id*. at 8. By contrast, a "body cavity search" under DOCCS policy means physical examination of an individual's "oral and/or genital cavities"; DOCCS policy requires that such a search be performed by a medical professional and authorized by the "Superintendent, Acting Superintendent, or facility Officer of the Day." *Id*. at 10-11.

Here, Plaintiff testified that during the search other officers watched and laughed while speaking with one another about how Plaintiff "keep[s] going through all of this." (Dkt. No. 60, Attach. 5 at 52, 58.) Further, although Plaintiff was not singled out—because another incarcerated individual was simultaneously searched in an adjacent room—viewing the facts in the light most favorable to Plaintiff, it was not a routine and ordinary strip search. (*Id*. at 54.) In addition, Plaintiff alleges that after the search was completed and he was given his clothes back, his gloves and scarf were not provided. (*Id*. at 61.) As a result, for purposes of this motion, the Court will assume that there is a genuine dispute of material fact about whether Defendant Rielly's conduct constituted an adverse action.

Nevertheless, I find that Plaintiff fails to present evidence establishing a genuine dispute of material fact causally connecting the incident on April 6, 2018, and his protected conduct in December 2017.

As set forth above in Part III.B.1. of this Order and Report-Recommendation, courts have declined to "define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," and the Second Circuit has held that the passage of "only six months" is sufficient to support an inference of a causal connection. *Espinal*, 558 F.3d at 129. Here, approximately four months passed between Plaintiff's protected conduct and Defendant Rielly's alleged adverse action. Assuming—without deciding—that Defendant Rielly's alleged adverse action was close enough in time such that a causal connection could be inferred, the Second Circuit has "consistently required some further evidence of retaliatory animus before permitting a prisoner to proceed to trial on a retaliation claim." *Washington v. Afify*, 681 F. App'x 43, 46 (2d Cir. 2017); *see Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 370 (S.D.N.Y. 2011) (collecting cases) ("To be sure, a 'plaintiff can establish a causal connection that suggests

retaliation by showing that protected activity was close in time to the adverse action.' Such circumstantial evidence of retaliation, however, without more, is insufficient to survive summary judgment."); *Ziemba v. Thomas*, 390 F. Supp. 2d 136, 157 (D. Conn. 2005) ("Temporal proximity alone is not sufficient for the plaintiff's claim to survive summary judgment.").

Plaintiff presents no other evidence to support an inference that Defendant Rielly's actions on April 8, 2018, were causally connected to Plaintiff's protected conduct in December 2017. Even construing Plaintiff's testimony that during the search the other officers were laughing and making statements that Plaintiff "keep[s] going through all of this," he does not elaborate on what the officers meant by the term "through all of this." Viewing that allegation in the context of the record before the Court, this statement seems to refer to Plaintiff undergoing frequent searches such as the pat frisk on April 5, 2018, involving another officer and Defendant Oliver during which, Defendant Oliver allegedly stated that he had a similar experience with Plaintiff previously. The record does not contain evidence, from which a reasonable jury could conclude that Defendant Rielly took any action against Plaintiff on April 6, 2018, causally connected to Plaintiff's protected conduct in December 2017.

As a result, I recommend that the Court grant Defendants' motion for summary judgment with respect to Plaintiff's retaliation claim against Defendant Rielly.

**ACCORDINGLY**, it is

**ORDERED** that the Clerk of the Court is directed to amend the docket such that Defendant "C.O. Riley" is changed to Defendant "C.O. Rielly;" and it is further respectfully

**RECOMMENDED** that Defendants' motion (Dkt. No. 60) be **GRANTED** in part such that Plaintiff's excessive force and retaliation claims against Defendants Oliver and Rielly be

dismissed, and **DENIED** in part such that Plaintiff's retaliation claim against Defendant Laster survives; and it is further

   **ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on the parties, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

   **NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[23]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); FED. R. CIV. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).


Dated: December  15, 2022
       Binghamton, New York


                          *Miroslav Lovric*
                          Miroslav Lovric
                          U.S. Magistrate Judge

---

[23]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  FED. R. CIV. P. 6(a)(1)(C).